[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a dissolution of marriage action; the plaintiff, William Fogarty, is 48 years old, and the defendant, whose maiden name was Joy Halliwell, is 47 years old. They were married on June 17, 1978, in Thomaston, Conn., and have one minor child, Sean E. Fogarty, who was born on January 28, 1986. Sean lives with the defendant in the former marital home in Litchfield, Connecticut. The plaintiff lives in a condominium in Litchfield which he purchased in June of 1994.
The court characterizes this marriage as having been fairly harmonious for many years, but after the tragic death from illness in November, 1990 of their younger son who was born August 5, 1987 the love they had for each other was allowed by both to wither.
At the time of the marriage in 1978, the defendant owned her CT Page 4664 own home in Thomaston, CT., which had an equity of about $40,000. She also had about $29,000 in the bank, a small amount in stocks and bonds, a small retirement account and her own new car. The plaintiff had about $1,000 cash and a four year old car. He claims that he also had $25,000 in the bank, but he was unable to prove that. The defendant was employed in 1978 in an office manager type of position in a veterinarian's office, and had her own part time dog grooming business; she is a trained licensed practical nurse. In the early 1980's the defendant was not employed except for an occasional dog grooming job which brought in very little earnings. The plaintiff was employed as a title searcher for Lawlor Title Co. in 1978; in 1986 he incorporated his own title searching business, Record Info Inc., which is still his employer. He also is a certified real estate appraiser. The plaintiff has completed one year of college and the defendant is a high school graduate. Both parties are apparently in good health.
The parties resided in the defendant's home in Thomaston from the time of their marriage until 1980, when they bought a home in Litchfield for $83,000. They took out a $43,000 mortgage and borrowed $5,000 from the plaintiff's sister. The balance of the purchase price came primarily from the defendant's pre-marital assets. The mortgage and the $5,000 loan were paid off mostly from the proceeds of the sale of the defendant's Thomaston home later in 1980. Since 1980, the plaintiff has personally done a large amount of work renovating the marital home. The defendant assisted in this work.
In October 1980, the defendant received $18,000 from an auto accident settlement, which she deposited in the parties' joint bank account. In 1988 they bought a home in East Harwich Mass., Cape Cod, for $128,000, with a mortgage debt of $85,000. That mortgage debt was paid in full by the taking of a mortgage on the Litchfield marital home, which was a first mortgage because that property was mortgage free. The Cape Cod property is now worth approximately $90,000.
When the plaintiff purchased his condo in June, 1994 he took $19,000 from the parties' joint bank account that he had inherited from his sister and used part of that for a down payment. That condo has a present equity of approximately $10,000, based on a fair market value of about $85,000.
There was disputed expert testimony of the fair market value of the Litchfield home. The court finds that the fair market value CT Page 4665 of that home is $295,000. It is encumbered by a mortgage of approximately $57,000, leaving an equity of $238,000. The Cape Cod property is in both names; the Litchfield home is in the defendant's name, and the Litchfield condo is in the plaintiff's name.
During the 1980's, the plaintiff formed a partnership with a lawyer in Waterbury, which bought and sold real estate. The plaintiff and defendant put $11,000 of their joint funds into this partnership in 1985. The plaintiff's partner has recently filed bankruptcy and may well be free of any partnership liabilities. The sole real estate now owned by the partnership has a negative equity, and because of this and tax and other liabilities resulting from a previous sale of real estate, the plaintiff has significant debt arising from his partnership interest.
The plaintiff has been in control of the Cape Cod house and has rented it for only about half the summer season, and did not show this income on his January 1996 Financial Affidavit; all of the income has been going to him.
As part of a court order on August 8, 1994, the plaintiff had to complete a list of repairs to the marital home on or before October 15, 1994. He has failed to do these repairs.
The defendant is employed as a licensed practical nurse at the Forman School in Litchfield, under a contract that expires June 4, 1996. It is unknown whether she will be rehired because of cutbacks at that school.
Based on their January 23, 1996 financial affidavits, the plaintiff's weekly gross earnings are $528.25; and the defendant's gross earnings are $381.00 per week. There was considerable conflicting evidence offered as to the plaintiff's earning capacity and actual earnings. His earnings fluctuate because of their relationship to the real estate market. Of concern to the court on the issue of his earnings, is the contradiction between his sworn August 8, 1994 financial affidavit, which shows gross weekly income from employment to be $300.00 and his June 30, 1994 Residential Loan Application to Naugatuck Valley Savings and Loan Association, (Plaintiff's Ex. 11), in which he states that his monthly employment income is $3,160.00. Above the plaintiff's signature are the words "Certification: I certify that the information provided in this application in [is] true and correct as of the date set forth opposite my signature. . ." (6/30/94 This amount, $3,160 CT Page 4666 per month, represents weekly income more than double the amount sworn to on the plaintiff's financial affidavit only thirty nine days later.
Furthermore, the plaintiff's income a, shown by his tax returns for 1992, 1993, 1994 and 1995 has been consistently greater than the $300.00 weekly gross shown on his January 26, 1996 Affidavit, which also represented his financial picture in April, 1996. (Plaintiff's Exhibits 4, 5, 6 and 7).
The court finds after reviewing the conflicting evidence, that the plaintiff's current net earning capacity for guideline purposes is approximately $515.00 per week, and the defendant's net income for guideline purposes is approximately $326.00.
The plaintiff's company employs two men; the plaintiff and Barry Erickson, a title searcher, who works about thirty-five hours a week, and is paid $100.00 for a full title search and $30.00 for a current owner bring-down. Record Info. Inc. also pays for medical insurance for Mr. Erickson.
The court finds that if the plaintiff's income has fallen off because of a slowing down in the real estate market, he could do all or some of the work done by Mr. Erickson, thereby substantially increasing his own income.
After considering all the evidence of the trial, both oral testimony and the exhibits, in conjunction with the statutory criteria of Conn. Gen. Stat. § 46b-81, et seq., and having evaluated the credibility of the witnesses, the court finds that the marriage has broken down irretrievably and makes the following orders:
1. A dissolution of the marriage.
2. The plaintiff shall pay child support in the amount of $130.00 per week.
3. The parties shall have joint legal custody of Sean, physical custody to the defendant, subject to reasonable visitation rights in the plaintiff.
4. The plaintiff is ordered to pay the defendant the sum of $100.00 per week as alimony until January 1, 2002, or until her death, remarriage, or cohabitation, if any of these events occurs before January 1, 2002. If the defendant wishes to sell the CT Page 4667 property, the plaintiff is to have the right of first refusal.
5. The former marital home at 111 Chestnut Hill Road, Litchfield is awarded to the defendant, but in consideration of the plaintiff's entitlement to part of that marital asset, he is awarded the sum of $40,000, to be evidenced by a non-interest bearing promissory note from the defendant to the plaintiff, payable on or before the earliest of January 1, 2002, the death of the defendant, transfer of any of the defendant's interest in the property, her remarriage, or her cohabitation. If the defendant becomes in default of this note, it will become interest bearing at the legal rate of interest and the plaintiff shall be entitled to reasonable costs of collection, including an attorney's fee. This promissory note is to be secured by a second mortgage on 111 Chestnut Hill Road, Litchfield. The defendant shall assume and pay the first mortgage and hold the plaintiff harmless.
The plaintiff is awarded the property in East Harwich, Mass., and the Lawlor Street property in Waterbury, Conn., and the condominium in Litchfield.
6. The plaintiff shall be responsible for any and all obligations, tax or otherwise, arising out of his partnership with Attorney Mitchell Berger in Park Place Associates, and for all debts appearing on his January 23, 1996 financial affidavit. Each party shall be responsible for the debts listed on their respective financial affidavits, and shall keep any other assets shown on those affidavits, except for the John Deere tractor, which should be sold and the proceeds divided equally, and the 1983 Dodge Ramcharger, which shall be transferred to the defendant.
7. The defendant shall transfer to the plaintiff her entire right, title and interest in Record Info., Inc.
8. The defendant shall maintain the child on her medical insurance as available through her employment. Each party shall pay one-half of any unreimbursed medical, dental, optical, prescription, orthodontic and psychiatric expenses of the child.
9. The plaintiff shall maintain a life insurance policy in the amount of $100,000 naming the child as primary beneficiary until the child reaches 23, and shall provide the defendant with authorization enabling her to obtain information about this policy.
10. Each party shall be responsible for their own attorney's CT Page 4668 fees.
11. Each party shall indemnify and save harmless the other from any debt payments.
12. The plaintiff must complete by August 1, 1996 the list of repairs agreed upon in the Stipulation approved by the court on August 8, 1994.
RICHARD A. WALSH, J.